## OZANNE vs. DELILE.

APPEAL from the court of probates of the parish of St. Martin.

PORTER, J. delivered the opinion of the court. The petitioner states that he is mater-

West'n Dis'ct
*August* 1826.

OZANNE
*vs.*
DELILE

persons, when
they have
been specifi-
cally stated in
the complaint.
He cannot
be allowed to
shew that the
petitioner
(who does not
solicit the tu-
torship) lives
with a woman
of color.

On a charge
of bad morals
in the tutor
and of such
neglect as en-
dangers the
minor's pro-
perty, evi-
dence cannot
be given of the
neglect of
their educa-
tion.

It is not a
good ground
for the *remov-
al* of the natu-
ral tutor, that
he failed to
make an in-
ventory in ten
days after his
appointment.
Neither is
his insolvency
*before* his ap-
pointment, a
cause of re-
moval.

nal uncle to the children of the defendant; that their mother is dead, and that the defendant is a man of wasteful, extravagant, and depraved habits; that, by his bad management, he has reduced himself to a state of bankruptcy; that in conducting the affairs of his children, he has manifested dishonesty and bad faith—that he has never taken the oath required by law, nor has he made an inventory—that he has no fixed domicil—and that he has lately clandestinely absconded from the parish of St. Tammany, where he resided. The petition concludes by a prayer, that the defendant be deprived of the tutorship of his children.

An amended petition was afterwards filed, in which the defendant was charged with the intention of selling his children's property, and removing to France—with defrauding his creditors—and with failing to give security for his faithful administration as tutor.

To these allegations, the defendant opposed a general denial; and the parties being heard in the court below on the merits, judgment was rendered in favor of the defendant, from which the plaintiff appealed.

The cause appears to have been most ob

stinately contested in the inferior court. There is a vast mass of evidence, oral and written, and the record loaded with bills of exceptions.

The first is taken to an opinion of the court refusing the plaintiff permission to prove certain acts of misconduct of the defendant, in his transactions with third persons. The testimony was objected to, on the ground that the transactions attempted to be proved, did not relate to the management of the affairs of the minors.

We think the judge erred. The facts attempted to be proved, were charged in the petition. The evidence was, therefore, not subject to the objection that the defendant was surprised by its introduction. The principle on which it was rejected, would establish a rule that we do not consider correct. A natural tutor may prove to be so base and dishonest, in his transactions with other men, that it would be wholly unsafe to permit him to have the education of even his own children entrusted to his care. The law declares it a ground of deprivation, if the tutor be a man of conduct notoriously bad, or of depraved morals. There can surely be no

Wes'n. Dis'ct.
*August*, 1826.

OZANNE
*vs*
DELILE.

safer or better mode of establishing the last mentioned cause of exclusion, than to allege the special facts, and prove them on the trial. As the evidence excluded comes up on the record, we will give the plaintiff the benefit of it, when we come to examine the case on its merits.

The second bill of exceptions was taken to the opinion of the judge, permitting the defendant to prove that the plaintiff lived with a woman of colour. We are at a loss to conceive why the evidence was offered ; or, if offered, why the defendant thought it important to exclude it. The plaintiff does not ask to be appointed tutor to the children— *his* faults, or misconduct, cann t in any respect make the position of the defendant better or worse. The judge certainly erred in admitting it, but it is wholly irrelevant, and cannot have any effect on the decision of the cause.

The next exception presents the question, whether the plaintiff could give in evidence the inattention of the defendant to the education of his children. This was opposed, because no such allegation was made in the petition. It was rejected by the court, and

in our opinion correctly  The pleadings

charge bad morals in the father, and such mismanagement in his own affairs, and those of his children, as will endanger the loss of their property.  No averment is made that he had neglected either their moral or mental education; and if these things were to be added to the catalogue of his offences on the trial—and nothing more serious could be urged against him—he should have had such notice, as would have enabled him, either to prove the charge incorrect, or to have shewn the causes which prevented him from discharging one of the most important duties which, as a father and a citizen, he owed to his children and society.

The next question which the numerous exceptions on record present, is to the admissibility of various records and documents, tending to explain the transactions of the defendant as syndic of his own estate; and also the record of a suit of *Beauvais* & *al.* vs. *Delile*. The documents first mentioned, were correctly received, for his misconduct in relation to the matters which these papers treated of, is made a part of the depravity charged on the defendant.  The objec-

OZANNE
*vs.*
DELILE.

tion that they were between third parties, comes with a bad grace from the plaintiff, who urges the transactions of the appellee with others as a ground of his removal. What it was legal for the plaintiffs to prove, it was legal for the defendant to disprove.

The record of the suit of *Beauvais & al.* *Delile*, was offered to shew that several of the maternal relations of the children who are the principal witnesses in the cause to prove the depraved conduct of the defendant, once instituted a suit against him for the same object for which this action is brought: and that they afterwards dismissed it, in order to make themselves witnesses, as none could be found out of the family, to prove the bad conduct of the appellee. It would seem that any deduction of this kind, could have been made almost as strongly after the evidence was gone through, from the fact that no other important testimony of this kind did appear, but that furnished by the maternal relations. But as the defendant may have believed it important to shew that the want of other proof existed from the moment the proceedings commenced, and was not produced by the accidental absence of the witnesses; and as the

fact of the evidence coming almost entirely from that quarter, is certainly open to observation, we do not think the judge erred in permitting the papers to be read.

The next objection goes against the court admitting a copy of the inventory made by the defendant as tutor, because it should have been executed within ten days, and was otherwise defective. The judge considered this objection as going to the effect of the proof, and not to its admissibility—we agree with him, and we shall see what weight this objection is entitled to, when we come to the trial of the merits of the case.

The last exception we find it necessary to notice, is that taken to an opinion which suffered the deposition of one Meyers to be read. It is objected that this deposition contains evidence which is hearsay, and speaks of facts not at issue in the cause. The last objection would have been, perhaps, good, if the plaintiff had not opened the way for the evidence, by introducing proof which the testimony of the witness went to contradict. As to its containing hearsay, we have looked, in vain, through the deposition, for any support to the objection. The only fact which is sworn to

be derived from a conversation with the defendant, and it is not very material, is afterwards stated positively from the deponent's own observation to be true. We allude to the account given of the disease in the defendant's eyes.

On the merits, the cause presents three questions :

1st. Whether the appellee should not be deprived of the tutorship, for having failed to make an inventory within ten days after his appointment.

2d. Whether the bankruptcy of the defendant prior to his becoming tutor, should now be a cause of deprivation.

And 3d. Whether the evidence shews the defendant to be a man of conduct notoriously bad, and of depraved morals.

I. In support of the first, the plaintiff has referred to the provision in our late code which required the inventory to be made within ten days. He has also read to us the commentaries of French jurists, and the decisions of the tribunals of France, on an article in the Napoleon code, similar to ours. It may be true, that the law is so understood in France, but it has escaped the attention of counsel, that in construing our law, tho' it

may be expressed in the same language as
that of the Napoleon code, we are often
compelled to come to a different conclusion
from that which is rightfully drawn from it
there, because the textual provisions of our
statutes, must be interpreted in relation to
our former jurisprudence.

Our code does not formally declare that
the failure to make an inventory in ten days,
is a cause of depriving the tutor of the tutor-
ship ; it only directs the tutor to do so ; we
must therefore look to the ancient laws of
the country, to see whether any such penal-
ty was affixed to such neglect. By a re-
ference to them we find. that the dative, le-
gitimate and testamentary tutor, could be de-
prived of their office if they failed to make an
inventory, but that this penalty did not attach
to the father. As therefore the provision in
our code does not declare, that the failure
to make an inventory is a cause for excluding
the father from the tutorship, and as the
Spanish law did not pronounce the forfei-
ture for this cause, we are at a loss to con-
ceive on what grounds we can impose it. It
would be going too far for a court to say, that
the prescribing the same duty by a new law

to one class of tutors, that was formerly required of another, brought wi h it the same penalties for the breach of it. This would be legislating by analogy, not reasoning by it. Penalties ought not to be extended by implication, more particularly where the reason on which we must suppose the rule founded does not apply. All other tutors except the natural, require the confirmation of the judge, and when they make the application to be so confirmed, the law may well presume they are in a situation to go on and make the inventory within ten days. It makes no presumption on their affection to the minor; and presumes danger to his interests from the neglect of the tutor to furnish evidence of the property which comes into his hands. But by the death of the mother the tutorship is thrown *ipso facto* on the father. He may be at a distance when that event takes place. He may be confined himself to a bed of sickness, and without taking these exceptions to the general rule, we may we trust say, that in the greater number of cases there is a moral impediment to his doing so. There are few we hope, who within ten days of an event which had deprived them of

their wife, and the mother of their children, who could have the composure of mind necessary to the making a correct inventory of the property which had been the fruit of their mutual labor and care. *Civ. Code Febrero, p.* 2, *ti.* 1. *cap.* 1. § 2, *n* 198.

II. The second ground which is also one of law, is easily disposed of. Our code says the failure of the tutor *after* the appointment, shall be a ground of exclusion. This we consider a clear expression of legislative will that the failure before was not. *Vol.* 4, 379.

III. The third ground which is one of fact, in relation to the unworthiness of the father, presents more difficulty than any other in the cause. The evidence as we have already stated, is voluminous, and to enable others to judge of it, the whole, oral and written, would have to be inserted in this opinion. This the limits of a judicial decision will not permit. We have perused it with the utmost attention. The principal evidence of the depravity of the father is derived from the relations of his deceased wife. And though it is true, that such evidence has the advantage of coming from those who had the best opportunity of knowing his morals, yet it is strange

Wes'n. Dis'ct.
August. 18 6.

OZANNE
vs
DELILE.

that if his conduct be such as they represent it, no other material testimony could be given in relation to it. What judgment our duty would require us to pronounce, if the case was before us without the presumptions that attach to a judgment in the court below, we should perhaps have great difficulty in saying. The defendant however stands before us, with the decision of a judge in his favor, who knows the parties; the witnesses—and who heard them, and saw them give their testimony. This circumstance turns the scales which would otherwise perhaps stand even. Nor can we say he erred. The law it is true provides, that not even the father, shall retain the direction of his children, if his conduct shews, that he is incapable of rearing them in that manner, which will make them good members of society. But that law values in a high degree, and presumes much, on the strength of natural affection; and knows that in general it cannot trust to any surer pledge, than that which is furnished by parental attachment. The evidence therefore should be strong and conclusive, that would destroy that presumption: that would fix a stigma for life on the parent: which would deprive him, if he has

the common feelings of our nature, of one of the greatest delights human existence affords, and at the same time cut off his children from enjoying parental affection, and learning how to repay it.

It is therefore ordered, adjudged and decreed, that the judgment of the court of probates be affirmed with costs.

*Baker* & *Simon* for the plaintiff, *Brownson* for the defendant.